Afternoon is in re the Marriage of Wittland 4-10-0015. For the appellant Mr. Whitworth, for the appellee Mr. Heck, you may proceed. Thank you. May it please the court, Mr. Heck. Your Honor, this matter comes before the court in regards to a petition for increase in child support filed by Ms. Wittland, formerly Ms. Wittland, Ms. Johnson in this particular case. Evidence was presented to the court and ultimately the petition for increase in child support was denied and the court made the finding that there was no reason to deviate from a previous court order that was entered in the amount of $300 per month. It's Ms. Johnson's contention that the court erred for several reasons. First of all, the court made the specific finding that the needs of the child had increased due to her age and her activities. Secondly, it's our position that the court erred because the court found that Mr. Wittland's income had increased even though that was not significant, that his income had in fact increased. The trial court found that, didn't it? Yes, the trial court found that his income had increased but not significantly. Thirdly, it's our position that the court erred because the court did not set the child support within the statutory guidelines as contained in the Illinois Marriage and Dissolution Marriage Act even though requested by Ms. Johnson. How does that importance come about based upon what the prior support was and then the question of change of circumstances? Okay. Well, two reasons. First of all, as the court is aware, the trial court in this particular situation can modify a child support with obligation of a noncustodial parent in a couple of different ways. The first way is a showing of a substantial change in circumstances, but most importantly, under Section 510A2A, if there is an inconsistency of at least 20% between the amount of the existing order and the amount of child support that results from the application of the guidelines specified in Section 505 of the Dissolution Act. Well, if you look in this situation, and that's one of the reasons specifically prayed for by Ms. Johnson is that the amount of child support that was ordered was $300 per month. The amount of child support that was ordered was $400 per month. So it's approximately 40-45% deviation, and according to statute, if that situation arises, the court should modify the child support obligation. And that doesn't require a showing of a change in circumstances. That just shows that calculation of the difference between the amount of child support set and the way the child support should be set following the statutory guidelines. So it's our position that the trial court did in fact interfere in one of those three ways by either not setting the child support based upon the statutory guidelines, because there was a showing, the evidence showed, that child support was previously set at $300 per month and should have been set at $520 per month. Nobody complained at that time? Well, she asked, Ms. Johnson asked in her petition that the court set child support based upon the statutory guidelines. I'm talking about when the $300 was set, who complained about it? When it was originally set, nobody complained about it. It was set a couple of years ago and it was by agreement of the parties. There was a transfer of custody at that time, and nobody complained about it at that time. And it was done by agreement of the parties at that time. In our appellant brief, we have cited some cases that we think are clearly relevant and clearly on point in this particular case. First to discuss the Regal case. In that particular case, and I point that out because it's as close to an analogous situation as we can get to this particular case. In the Regal case, the court found that a $450 per month increase in expenses amounted to a substantial change in circumstances, even though the noncustodial parent's income had decreased. And also in that court, the appellate court indicated that the noncustodial parent's child support was only 13% of his salary. Also, it's our position the court erred in this particular case because the court did not state any reasoning why it was deviating from the statutory guidelines, when in fact Ms. Johnson had requested the court to set child support within the statutory guidelines. Doesn't that presume that the court has first find that this was a substantial change of circumstances? The court concludes there isn't, but there's nothing to change. I agree, but in this particular case, the court found that the needs of the minor child had increased because of age and their activities. So the court, it's our position the court erred in not making that finding that there was a substantial change in circumstances. Because the court, on one hand, says that the needs of the child had increased due to age and circumstances, and that was the evidence presented to the court. Did the court say you hadn't met your burden of proof and no evidence had been presented, which could be a basis for changing the agreement? Absolutely it did. So isn't your argument at best one where the court was ambiguous in what it was saying, except the ambiguity was resolved because you lost? It could be said that, but it's our position the court erred in making that finding. So we're back to the question of whether or not the findings of fact were erroneous when, contrary to math, it was written in the evidence. That's part of our argument as well. That's essentially a standard of unreasonableness? The court's findings were unreasonable given the evidence presented? Yes. Pretty hard standard. I'd also point out to the court, we cited the case of Breitenfeldt, which is a court district case. In that particular case, a petition was filed requesting an increase in child support, whereby the custodial parent's daycare expenses increased $300 per month, and her child support obligation or her child support that she received was $488 per month. And in that case, this court found that that was a clearly change in circumstances. In the case at hand, the Johnson case, she was receiving child support in the amount of $300 per month. The increased expenses that she had in raising her daughter in Florida was above $1,100 per month. So it's our position that there's clearly a greater need for an increase in child support in this particular case as compared to the Breitenfeldt case. So it's our position that the trial court erred in this particular case. We have cited other cases. The fourth district has also held that the cultural activities are in the best interest of the child, and that's at Henry Marriage in Florence, because it's argued that these particular activities that this child is involved in, which is gymnastics, cheerleading, and other matters, it's our position that they're cultural activities and in the best interest of the child, and therefore should have been considered by the court. As stated, it's our position that the court erred for those three particular reasons, and we're asking the court to reverse Judge Woolleyan's decision in this particular case and set the child support in accordance with the statutory guidelines, which is of record in this particular case. Once again, what is your best case? The Riegel case is a third district case. It's a 1993 case. Riegel, you indicated in your brief that $450 was a dramatic increase. Yes, correct. Does it say anything about what the income of the paying party was? Yes, it actually stated that in that particular case, in the Riegel case, the noncustodial parent's income had actually decreased in that particular case, and the court found that $450 per month increase in expenses for the minor child constituted a substantial change in circumstances, thus warranting an increase in child support. So it's analogous to this particular case in all respects, except in this case, Mr. Whitlam's income had actually increased from the last time the child support had been set. So it's our position that the Riegel case is as close to on point as you can get to the facts of this particular case, because the $450 increase in expenses... Well, I'm talking about what in Riegel did it originally show as to the support order. As in... In Riegel, like this one, where he is making $500 some dollars a month and only paying $200. Okay. In the Riegel case, the court held that the noncustodial parent's child support obligation was only about 13% of his salary, which it should have been set in that particular case at 25% of the person's salary. So in that case as well, the noncustodial parent was paying well less than the statutory guidelines as required in the Illinois Marriage and Dissolution Regulations. So it's about as identical as you can get to the facts of this case. Okay. Good afternoon, gentlemen. May it please the court, Mr. Woodworth. Your Honor, this case is not like the Riegel case. This case is not like Mr. Woodworth has just portrayed it. You had the opportunity to read not only the briefs, but also the transcript in this case. I think what we have to look at to begin with is the basis, the starting point, the threshold, whatever name you want to put on it. But this case started with an order. The order was that of March 12, 2007, that set child support at $300 a month beginning January 15, 2008. That wasn't an... It was an order of court, but it was an agreed order of court. There was no findings. There were no anything. That was the agreement between Roger D. Whitland, my client, the petitioner, and Rhonda Johnson, Mr. Woodworth's client, the respondent. They agreed on that. We put specific findings in there as to why that agreement was. And so on March 12, 2007, we had an order for child support. Then there was a petition filed to increase that child support. The filing date was January 2, 2009, which was just about a year after the beginning of the child support order. And contrary to what Mr. Woodworth just argued, the argument was it pays for a change in accordance to the statute because of a substantial change in circumstances. Well, as we pointed out and pointed out in our brief, the situation here has not changed. If anything, it's gone down from the standpoint of Roger Whitland. He did have an increase in pay. He had a $31 increase every two weeks, which is $15 per week, which has barely cost a living. But in that situation, when this was going on, that Rhonda did everything that I guess everyone expected her to do. She had remarried at that time. She had remarried before the change of custody took place. Took the child to Florida and began a lifestyle that was really different than the lifestyle we had in Quincy, Illinois with the Whitland-Johnson family. When she went down there, there was nothing that was not anticipated. I think the important thing that we point out in the brief is that there was no facts. There were no evidence. When I asked Rhonda Johnson under the cross-examination, where's the expenditure? What are you spending this money on? How much is this and how much is that? She couldn't say. She didn't know. It's incumbent upon the appellate, in this case Rhonda Whitland, to make a record for appeal. And as Judge Wood, excuse me, Judge Willihan said, they made no record here. That essentially what's happened is that she came before the courts, in my opinion, that she thought that if she came before the court and said, here I am, a year has passed, that I get more money. To begin with, there was no more money to get. The judge found that he had an increase, but it wasn't a substantial increase. He didn't find that. The judge also found that although she had grown in her needs simply because she was living, she got more demands, but they never proved any increase in what increase was needed. And so when you put all of these things together, that in order to get the matter before your honor, before the court, you plead what I consider to be a shotgun area of pleading. You plead, first of all, error when he found the needs of the child have increased yet did not find a substantial change in circumstances. There are no facts in which to find substantial change in circumstances. He found the child got older. He found that she went down to Florida. He found that everything that was expected when we did the order back setting child support had occurred. There had been a substantial increase, but there had been an increase in needs, but there had not been a substantial change. And so he didn't order it. That's supported clearly, clearly by the record. As far as the error, they say the next that was found that he did not, that Roger's increase did not amount to any change in circumstances, it didn't. I mean, we're living in an age where $31 in a year's time, $15 a week, barely keeps up, if at all, with the cost of living. It's a good six-pack. Yes, sir. Yes, sir. So in order to say that this matter was proven or that Judge Wollohan did something wrong or that he erred, it's simply not there. And then in my opinion, the catch-all where he erred because of the statutory guideline, I think as Justice McCullough had suggested, and Mr. Woodward relies quite heavily on the regal case, the regal case, although he wants it to stay as close as we can get, it's clearly distinguishable as we put in our brief. But in the regal case, there was no flaw. There was no beginning point. There was a beginning point here. And I submit to the Court, to your honors and to this panel, that there's been no error in this case. There wasn't. And Judge Wollohan heard the case, as you hear probably on a daily basis, that he judged the credibility of the witnesses, what he had seen, what he had heard, what weight was appropriate, and he made the appropriate decision. I ask this Court to affirm Judge Wollohan. No questions. Thank you. Thank you very much. Rebuttal, Mr. Woodward? Thank you. First of all, in regards to the regal case, Mr. Heck argues that there was no beginning point or no flaw, unlike the case that we have here. But in regal, the Court clearly held that the child support previously set in that case was only 13% of the noncustodial parent's income. Just like this case, it's lower than the statutory guidelines. It's argued that there's no fact, there was no evidence presented to the Court, but to the contrary, the budget of the child and Mrs. Johnson was introduced into evidence. Mr. Whitman's income was introduced into evidence. The child support statutory guideline calculations were integrated into evidence. It was presented to the Court. Also, I point out that the petition wasn't filed a year after the original order was entered. It was almost two years after Mrs. Johnson and the child had relocated to Florida. Those needs and the needs of that child had increased in this particular case. If, in essence, if the Court does not reverse Judge Woolyhand's decision, then in essence, what's going to happen is there's going to be situations where it's going to be argued that, hey, you agreed to this previously, you're stuck with it. Well, we all know that child support is always modifiable. The parents of a child cannot contract concerning child support. They cannot contract away that particular support obligation because it's owed to the child. So child support is always modifiable, regardless. Either one of two ways. One is showing a substantial change in circumstances. Or two, under A2A of 510, if there's a deviation between the statutory guidelines where the child support should be set and the current amount of child support. And in this particular case, there's a deviation between 40 and 45%. So in this particular case, Judge Woolyhand erred in not increasing Mr. Whitman's child support obligation. Thank you. I'll take this matter under advisement and recess.